*662 OPINION.
Smith :
This appeal alleges error on the part of the Commissioner in the determination of the taxpayer’s income tax liability for the years 1919 and 1920 in the following particulars:
(a) Disallowance of deduction for depreciation on war facilities amortized.
(b) Portion of 1918 Federal income tax added to taxpayer’s income for 1919.
(c) Erroneous computation of nontaxable Liberty Bond interest for 1919.
(d) Erroneous adjustment of New York State franchise and Federal capital stock taxes.
(e) Disallowance of a part of the compensation paid to officers in 1919.
In addition the taxpayer claims that it is entitled to the assessment of profits tax for 1919 and 1920 under the provisions of section 328 of the Revenue Act of 1918.
(1) Taxpayer alleges that the Commissioner has failed to allow any deduction for depreciation for the year 1919 in respect of the unamortized cost of war facilities added during the years 1918 and 1919. The additions to plant account for amortizable war facilities were as follows:
1918_$17, 335.00
1919_ 23, 945.22
Total_ 41,280. 22
The taxpayer was allowed, in 1919, 50 per cent amortization, oi-$20,640.11, in respect of these additions. The taxpayer now contends that inasmuch as only one-half of the cost of such additions was amortized it should be entitled to depreciation in respect of the unamortized cost.
We are of the opinion that the taxpayer’s claim upon this point is without merit. Under the rulings of the Commissioner, depreciation may not be claimed upon property that is subject to an amortization allowance; that is to say, the amortization allowance is inclusive of depreciation.
It appears, however, that the taxpayer spent $15,130.09 for additions to plant account during the year 1919 which was not subject to an amortization claim. The Board finds that it is entitled to depreciation at the rate of 4 per cent per annum for one-half year upon such additions. It is therefore held that the taxpayer is entitled to a deduction for depreciation for the year 1919 of $302.60 in addition to the amount allowed by the Commissioner. .
. (2) The Commissioner confesses error with respect to the addition to net income reported for the year 1919 of $7,993.03, which the Commissioner alleges to have been “1918 income tax charged *663 to P. & L.,” and with respect to $574.76 nontaxable Liberty Bond interest. The Board concludes that these items will be adjusted accordingly.
(3) The taxpayer paid no New York State franchise tax until 1920. Section 209 of the Tax Law of the State of New York provides that
For the privilege of exercising its franchise in this state in a corporate or organized capacity every domestic * * * corporation, * * * shall annually pay in advance for the year beginning November first * * * an annual franchise tax, to be computed by ,the tax commission upon the basis of its net income for its fiscal or the calendar year next preceding, * * *.
By section 219-c of the same Tax Law the tax is made payable on or before the first day of January of each year. If it be assumed that the New York State franchise tax payable for the fiscal year November 1, 1919, to November 1, 1920, accrued within the calendar year 1919, and the tax due for the period November 1, 1920, to November 1, 1921, accrued within the- calendar year 1920, the amounts which the taxpayer is entitled to deduct from the gross income for the years 1919 and 1920, in respect of this tax, are $6,084.77 and $22,401.50, respectively.
The question whether the New York State franchise tax accrues within the calendar year containing the first two months of the fiscal year for which the tax is imposed appears to be settled by the case of New York v. Jersawit, 263 U. S. 493. In that case the Ajax Dress Co. went into bankruptcy on December 22, 1920. The question before the court was whether the company was liable to a full year’s New York State franchise tax. In the course of its opinion the court stated:
We are of opinion tliat the tax is a tax upon tlie right conferred, not upon the actual exercise of it, that it was due when the petition in bankruptcy was filed, New Jersey v. Anderson, 203 U. S. 483, 494, and that the claim of the State for the whole sum .should have been allowed.
The case cited by the Supreme Court is authority for the statement that a tax which is due and owing has accrued. The question in issue there was whether a tax of the State of New York could accrue before the time when the tax was due and payable. The court stated (203 U. S. 494) :
The amount claimed for the year 1903, it is insisted, had not accrued at the time of the adjudication in bankruptcy, which was on April 23, 1903, the return being made on May 2, 1903, and the assessment was not made until July 1, 1903; but the annual return required to be made to the board, on or before the first Tuesday in May, is upon the basis of the capital stock issued and' outstanding the first of January preceding the making of the return. The bankrupt act requires the payment of all taxes legally due and owing. We think the tax thus assessed upon that basis was legally due and owing, although not collectible until after the adjudication.
We can not doubt, therefore, that the New York State franchise tax for which the taxpayer became liable for the fiscal years November 1, 1919, to October 31, 1920, and from November 1, 1920, to October 31, 1921, accrued during the calendar years 1919 and 1920, respectively Appeal of Russell Milling Company, 1 B. T. A. 194.
The Federal capital stock tax imposed by section 1000 of the Revenue Act of 1918 is denominated a “ special tax.”
“ Special taxes ” are payable in advance. (Section 3173 U. S. R. S.) They become due as of the first day of the fiscal year (July *664 1). Taxpayers liable to special taxes are required to make returns to the collector not later than July 31 of each year, and after they have received notice of the assessment of the tax they have ten days within which to pay the tax without penalty. (Section 3184 U. S. E. S.) Liability for the payment of capital stock taxes for the years 1919 and 1920 was incurred by the taxpayer on July 1, 1919, and July 1, 1920. During the calendar year 1919 the taxpayer was subjected to an additional liability for capital stock tax in respect of its capital stock tax return filed during the year 1918. Such additional capital stock tax liability accrued on February 24, 1919, the date of the approval of the Eevenue Act of 1918. (The capital stock tax imposed by this Act was retroactive to July 1, 1918, and it was provided by section 1004 of the Act that the tax assessable for the period July 1, 1918, to June 30, 1919, should be credited with any tax paid under the Eevenue Act of 1916 for the same taxable year. The. amount of the capital stock taxes which became due and payable during the years 1919 and 1920 were $2,728.50 and $2,068, respectively.
(4) For the years 1915 and 1916, the president and the treasurer of the taxpayer devoted their energies to the success of the corporation without receiving any compensation therefor. For the year 1917 the president was paid a salary of $1,500 and the treasurer a salary of $3,500. For 1918, each was paid a salary of $1,000. In 1919 the executive committee of the board of directors fixed the salary of the president at $1,500 per annum from March 1, 1915, and of the treasurer at $3,500 per annum from the same date. The total amount of the salaries which would have been paid these individuals from March 1, 1915, to December 31, 1918, if they had been paid at the rate of $1,500 per year for the president and $3,500 per year for the treasurer, would have amounted to $19,166.66. Only $7,000 had actually been paid them for compensation during these periods. During 1919 the corporation was in funds with which to pay fair salaries, and the president and treasurer were paid total compensation of $17,166.66. The Commissioner has disallowed $12,166.66 of this amount upon the ground that it was not an ordinary and necessary expense of the corporation for the year 1919.
Under section 234(a) (1) of the Eevenue Act of 1918 a corporation taxpayer is permitted to deduct from gross income “ all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered.”
For the years prior to 1919 there was no liability on the part of the taxpayer to compensate its officers for services actually rendered. No liability for the payment of salaries in excess of the amounts actually paid accrued during those years. However the increased amounts paid in 1919 may have been designated, they were merely increased compensation for services rendered, and are allowable deductions from the gross income of 1919.
The taxpayer has furnished no evidence of such an abnormality in income or invested capital for 1919 or 1920 as would warrant assessment under Section 328 of the Eevenue Act of 1918.